## MANUFACTURERS' FIRE ASS'N ET AL. v. LYNCHBURG DRUG MILLS.

**1. LOSS UNDER MUTUAL FIRE POLICY NOT A DEBT FOR WHICH TRUSTEES ARE LIABLE.**

The certificate of membership and insurance under which the insured becomes a member of a corporation formed for mutual insurance under sec. 3686, Rev. Stat., is not after loss such "a debt of the corporation" as makes the trustees liable therefor under sec. 3261, Rev. Stat.

**2. ALTHOUGH LIKE AN ABSOLUTE POLICY IT IS GOVERNED BY MUTUAL CONDITIONS AND LAWS.**

Although, in this case, the first part of the certificate is framed like an ordinary absolute fire policy, its construction is governed by subsequent "mutual policy conditions," and the liability is restricted to that provided by the statute, the charter and by-laws of the corporation.

**3. IF ULTRA VIRES, MEMBER COULD NOT HOLD FOR HIS OWN WRONG.**

If, as claimed, the certificate was in part *ultra vires*, the member could not hold the trustees personally liable to him under sec. 3261, Rev. Stat., upon a certificate issued in good faith.

ERROR to the Court of Common Pleas of Summit county.

BALDWIN, J.

The Lynchburg Drug Mills, a corporation of Virginia, brought suit in the court of common pleas of Summit county against the Manufacturers' Fire Association of Akron, a corporation, and Summer Nash and others, its directors, to recover for a fire loss, under what is called a policy of insurance, issued to it by the fire association, and recovered a judgment therefor against the fire association and its directors. The defendants filed in this court a petition in error to reverse that judgment.

The facts appear in an agreed statement. The policy or certificate was issued, as claimed, the fire happened, as alleged, in the amount of loss claimed, and proper proofs were made. The important question in the case is the liability of the directors for the loss under sec. 3261, Rev. Stat.

"The trustees, of a corporation created for a purpose other than profit, shall be personally liable for all debts of the corporation by them contracted."

It appears by the statement of facts and the exhibits which are a part of it, that the fire association was organized on December 30, 1889, under sec. 3686-3690, inclusive, Rev. Stat. By the certificate for incorporation the corporation was "formed for the purpose of enabling its members to insure each other against loss by fire and lightning, and to enfore any contract or contracts which may be by them entered into, by which those entering therein shall agree to be assessed specifically for incidental purposes and for the payment of losses which occur to its members."

The contract of insurance was dated May 12, 1891. It is largely framed like an ordinary policy of insurance. The association, by its corporate name, in form agreed to indemnify and make good to the assured "all such immediate loss or damage not exceeding in amount the sum or sums insured as shall happen by

fire and ligntning to the property specified;" to be paid "in accordance with the terms and provisions of this policy." After lengthy provisions in fine print, evidently copied from an ordinary fire policy, there follows "Mutual Policy Conditions," the first of which is:

"The assured heretofore named, by accepting this policy, therefore becomes a member of this association, and agrees to pay in addition to the assessment such sum or sums at such time or times, in such manner and by such installments as the directors of this association shall assess and order pursuant to its charter and by-laws, and the laws of the state of Ohio."

The close of these conditions reads:

"The by-laws of this association hereto annexed are hereby declared to be and form a part of this policy, and are to be resorted to in order to determine the rights and obligations of the several parties hereto. The indemnity under this policy is made subject to the foregoing conditions, limitations and requirements, and is so understood and accepted by the assured."

The by-laws are printed on the back of the policy.

By article 2, each policy-holder is a member, and the number of votes he is entitled to is fixed by the amount of insurance held by him.

Article ten provides for the method of doing business, providing, among other things, by secs. 1 and 2, for issue of policy and payment therefor by assessments, and in sec. 3:

"That in case the assessments provided for in sec. 2 shall be exhausted in paying the obligations of this association incurred during the life of the policies, that the member shall be subject to assessment to provide funds to pay all such obligations; provided that no member shall be liable to be assessed more than five times the amount of his first cash assessment in addition thereto, during the life of his policy."

It is agreed that the drug company became a member of the association May 12, 1891 (the date of the policy); that the property insured was located in Virginia, and was damaged June 27, 1891; that on November 2, 1891, said Association made an assessment upon its members to pay said loss. Within thirty days after notice of the assessment, a receiver was appointed, by the Supreme Court of Ohio, for the association, who took possession at once of all its assets.

The character of this contract and the relations of the parties thereto is directly involved in this controversy. Conceding that this associaton may enter into contracts, as, for instance, for supplies, salaries, rent or other incidental expenses, for which the trustees or directors might be liable under sec. 5261, Rev. Stat, it does not follow that the certificates of insurance authorized by the statute are of that character.

The statute under which the association is formed, provides:

"Section 3686. Any number of persons of lawful age, residents of this state, not less than ten in number, may associate themselves together for the purpose of insuring each other against loss by fire * * * and may make, assess and collect upon, and from each other such sums of money from time to time as may be necessary to pay losses * * * to any member of such association, and the assessment and collection of such sums of money shall be regulated by the constitution and by-laws of the association."

Section 3687 provides for the certificate of organization which shall set forth:

"Third. The object of the association which shall only be to enable its members to insure each other against loss by fire," etc., "and to enforce any contract which may be by them entered into, by which those entering therein shall agree to be assessed specifically for incidental purposes and for the payment of losses which occur to its members."

The statute then, under which this association became incorporated, provided only for the association of its members, "for the purpose of insuring each other," and again, that the object of the association "shall only be to enable its members to insure each other." We do not think that these certificates of membership, the purpose and object of which is so qualified, are contracts of the asso-

ciation for which the directors are liable. If they are, the guarded language is foolish and the whole law is futile, for the associaton never has assets sufficient to pay its losses other than the power of making assessments, which it is claimed in the very case before us are no assets to establish solvency.

The language of the statute seems to be carefully intended to prevent such results. But it is said that this certificate is not simply such a contract as is authorized by statute. The uncertainty of the contract arises from its being drawn without regard in large part, to the character of the association. Such a policy as would be issued by a stock insurance company formed for profit is followed by the "mutual policy conditions" and by-laws.

It is, however, provided, after making the drug company a member. that the "by-laws of the association form a part of the policy and are to be resorted to in order to determine the rights and obligations of the parties, and that the indemnity (which might otherwise seem absolute) is made subject to these conditions, and is so understood and accepted by the parties.

It seems a reasonable construction of the policy to say that the former language is controlled by this, and that the indemnity is not absolute, but only to be collected in the manner provided in the by-laws and the charter and the statute.

If the contract is more than this, it seems to us *ultra vires*, and in express disobedience of the statute.

"These sections" 3686-3690, says the Supreme Court, in *State ex rel.* v. *Monitor Fire Association*, 42 O. S., 546, "do place a specific limitation on the powers of such corporations."

In an analogous case, *State* v. *Assn. Co.*, 47 O. S., 167, relating to life associations, it is said on page 172: "The obligation of the policy, and the only one the company can thus contract, is to pay upon the death of the member such sum and only such as may be realized from the assessments made on members to meet it." This is based on the organic law (Rev. Stat., sec. 3630*a*), forbidding the company from guaranteeing any fixed amount, except it be "conditional upon the same being realized from the assessments made on members to meet them."

This proposition is hardly stronger than that contained in sec. 3687, Rev. Stat.

Suppose that the terms of this certificate of insurance were *ultra vires*. The certificate is agreed to be a certificate of membership as well. Is a member of a corporation to hold it or its directors liable on his certificate of membership as being *ultra vires?* By it, he, as himself a member of the corporation, becomes subject to the charter (of which the statutes are a part) and the by laws. He can ordinarily maintain an injunction to restrain the directors from entering into an *ultra vires* contract. We do not think, however, that he can say that in becoming a member he made an *ultra vires* contract with the corporation, and undertake to carry out his own wrong by enforcing it.

The doctrine of estoppel to plead *ultra vires* was not invented for such cases.

We doubt whether the statute (sec. 3686) authorizies any dealings at all with the drug company. It authorizes the association of "any number of persons of lawful age, residents of this state," etc. It is in the statement of facts expressly agreed that the drug company is a member of the association, and so it is in the agreement under which it claims, and we do not think that in this case we should say it is not.

It was not claimed to us that the judgment against the corporation was erroneous. The judgment against the corporation is affirmed; that against the other defendants, the trustees, is reversed, and proceeding to render the judgment the court of common pleas should have rendered on the pleadings and agreed statement of facts.

Judgment will be entered in their favor.

*Tibbals & Frank* and *F. H. Watters*, for plaintiffs in error.

*Oviatt, Allen & Cobb*, for defendant in error.